Lawrence Kill (LK-2685)
Linda Gerstel (LG-7150)
Todd D. Robichaud (TR-9284)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York  10020
Tel:  212-278-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT DURST,

                              Plaintiff,

          - against -

RICHARD SIEGLER, JONATHAN DURST and
DOUGLAS DURST, individually and as co-trustees
of the Robert Durst Trust u/a Dated May 1, 1962
and the Robert Durst Trust u/a Dated December
31, 1962,

                              Defendants.

---

**Judge Berman**

04 CV 06981

Civil Action No.

**COMPLAINT AND
JURY DEMAND**



RECEIVED
AUG 30 2004
U.S.D.C. S.D. N.Y.
CASHIERS

---

Plaintiff, Robert Durst ("Robert Durst"), by and through his attorneys,

Anderson Kill & Olick, P.C., as and for his complaint against defendants Richard Siegler

("Siegler"), Jonathan Durst ("Jonathan Durst") and Douglas Durst ("Douglas Durst")

(collectively, the "Trustees"), individually and as co-trustees of the Robert Durst Trust

u/a dated May 1, 1962 (the "May 1962 Trust") and the Robert Durst Trust u/a dated

December 31, 1962 (the "December 1962 Trust") (together, the "Trusts"), alleges as

follows:

## INTRODUCTION

1.    This action involves an attempt by certain members of the Durst family and beneficiaries of Durst family trusts, two of whom (namely, Jonathan Durst and Douglas Durst) are trustees of trusts created for the benefit of Robert Durst, to procure for themselves absolute control over the interests in certain entities and property held by Robert Durst's Trusts by wrongfully purporting to restrict Robert Durst's right to appoint such interests upon his death to his wife, Debrah Lee Charatan ("Wife").

2.    Upon learning of Robert Durst's marriage, in October 2001, the Trustees executed a shareholders' agreement and amended the operating agreements governing certain corporations and limited liability companies in which the Trusts hold various interests.  The effect of these actions by the Trustees allegedly is to restrict, condition or otherwise affect Robert Durst's ability to exercise his testamentary limited powers of appointment of the property of the two Trusts directly and free of trust to his Wife.  These restrictions directly contravene the express power granted to Robert Durst by the controlling trust instruments, which clearly and unambiguously authorize Robert Durst to appoint his trust interests and property to his "spouse" and "wife."

3.    By devising and signing the October 2001 shareholders' agreement and operating agreement amendments, the Trustees breached the fiduciary and contractual obligations each owed to Robert Durst.  The actions by the Trustees are even more egregious because each acted with a blatant conflict of interest and for his own personal enrichment.  In the event Robert Durst attempts to appoint his interests in the Trusts to his Wife, as authorized by the trust instruments, the October 2001 transfer restrictions purport to nullify such appointment and trigger the right of numerous beneficiaries of Durst family trusts – including two of the Trustees, Jonathan Durst and

Douglas Durst – to secure future control over and ownership of the interests held by
Robert Durst's Trusts. Absent the October 2001 restrictions, Robert Durst would be
able to appoint the property of the Trusts outright to his Wife and forever remove the
property from Durst family control. The remaining trustee, Siegler, turned a blind eye to
the conflicts of interest and self-dealing by Jonathan Durst and Douglas Durst in a
transparent effort to gain favor for his law firm, which has acted as long-time legal
counsel to the Durst family.

4.      To remedy the wrongdoings by the Trustees, Robert Durst brings
this action for, among other things, a declaratory judgment, pursuant to 28 U.S.C.
Section 2201, *et seq.* and Section 7-2.4 of New York's Estates, Powers and Trusts Law
("EPTL") seeking a declaration that the purported restrictions on Robert Durst's
testamentary powers are void or voidable by Robert Durst, as well as causes of action
for breach of fiduciary duty and for breach of contract.

## THE PARTIES

5.      Robert Durst is a resident of the State of Texas.

6.      Upon information and belief, Defendant Siegler is an individual who
resides in the State of New York. Siegler is a partner with Stroock & Stroock & Lavan,
LLP ("Stroock"), a New York law firm that has long provided legal services to the Durst
family. At all relevant times, Siegler acted as a Trustee of the May 1962 and December
1962 Trusts.

7.      Upon information and belief, Defendant Jonathan Durst is an
individual who resides in the State of New York. Jonathan Durst is a first cousin of
Robert Durst, a beneficiary of other Durst Family Trusts, and a member of the

management of various Durst family entities and properties as described below. At all relevant times, Jonathan Durst acted as a Trustee of the May 1962 and December 1962 Trusts.

8.   Upon information and belief, Defendant Douglas Durst is an individual who resides in the State of New York. Douglas Durst is Robert Durst's brother, a beneficiary of other Durst Family Trusts, and a member of the management of various Durst family entities and properties. Douglas Durst is the President of the Durst Organization. At all relevant times, Douglas Durst acted as a Trustee of the May 1962 and December 1962 Trusts.

## JURISDICTION AND VENUE

9.   This is a civil action, pursuant to 28 U.S.C. § 1332, between citizens of different States, where the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.   Further, jurisdiction over Plaintiff's claims is within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a).

11.   Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because at least one of the parties to this action resides in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## BACKGROUND FACTS

### The Durst Family and the Durst Family Trusts

12.      The Durst family is one of New York City's most prominent families, and one of the most respected names in the City's real estate industry.  The Durst family owns, manages and develops approximately ten (10) premium office buildings, including the well-known 4 Times Square building.

13.      The value of the properties in the Durst family portfolio is estimated to be in the billions of dollars.

14.      Robert Durst is a beneficiary of certain Durst family trusts, which convey to him significant interests in the real properties controlled by the Durst family.

15.      Robert Durst's Trusts were but two of numerous trusts created in or about 1962 by Seymour Durst to benefit the thirteen (13) grandchildren of Joseph Durst (the "Other Durst Family Trusts").

### Robert Durst's Trusts

16.      In 1962, Seymour B. Durst ("Seymour Durst") established two (2) Trusts for the benefit of his son, Robert Durst.  The express dispositional intent of Seymour Durst with respect to these Trusts is reflected in and embodied by the following two (2) documents:

        (a)      The Trust, dated May 1, 1962, for Robert Durst by and between Seymour B. Durst, Grantor, and Royal H. Durst and Robert D. Steefel, Trustees (the "May 1962 Trust Agreement"), a copy of which is annexed hereto as Exhibit "A"; and

        (b)      The Trust, dated December 31, 1962, for Robert Durst by and between Seymour B. Durst, Grantor, and Royal H. Durst and Robert D. Steefel, Trustees (the "December 1962 Trust Agreement"), a copy of which is annexed hereto as Exhibit "B" (the May 1962 Trust Agreement and the December 1962

Trust Agreement are together referred to as the "Trust Agreements").

17.     Upon information and belief, the May 1962 Trust owns interests in two (2) Durst family entities:  (i) The Durst Buildings Corporation ("DBC"); and (ii) 733 Properties, Inc. ("733 Properties") (together, the "May 1962 Trust Business Interests"). Robert Durst is the sole permissible beneficiary of the net income and principal of the May 1962 Trust during his lifetime in the Trustees' absolute discretion.

18.     Upon information and belief, the December 1962 Trust owns interests in the following entities:  (i) Durst Square Partners, LLC ("Durst Square"); (ii) Durst 14 Investors, LLC ("Durst 14"); (iii) Eastern Pork Products Company, LLC ("EPP"); (iv) the Durst Organization, L.P. ("Durst Organization"); and (v) Durst Development, LLC ("Durst Development) (collectively, the "December 1962 Trust Business Interests") (the May 1962 Trust Business Interests and the December 1962 Trust Business Interests together are referred to as the "Trust Business Interests"). Robert Durst is the life income beneficiary of the December 1962 Trust, and is the sole permissible beneficiary of the principal of said trust during his lifetime in the Trustees' absolute discretion.

**Jonathan Durst and Douglas Durst Also Are Beneficiaries of Durst Family Trusts**

19.     Two of the three Trustees of the May 1962 Trust and December 1962 Trust are Jonathan Durst and Douglas Durst.

20.     Jonathan Durst and Douglas Durst themselves are beneficiaries of Other Durst Family Trusts.

21.     In particular, Jonathan Durst is the life beneficiary of the following Durst family trusts:  (i) a trust, dated May 1, 1962, with David Durst, as Grantor, for the benefit of Jonathan Durst; and (ii) a trust, dated December 31, 1962, with David M. Durst, as Grantor, for the benefit of Jonathan Durst (together, the "Jonathan Durst Trusts").

22.     The Jonathan Durst Trusts own shares and/or interests in the following entities:  (i) DBC; (ii) 733 Properties; (iii) Durst Square; (iv) Durst 14; (v) EPP; (vi) the Durst Organization; and (vii) Durst Development.

23.     Moreover, Douglas Durst is the life beneficiary of:  (i) a May 1, 1962 Trust with Seymour B. Durst, as Grantor, for the benefit of Douglas Durst; and (ii) a December 31, 1962 Trust established by Seymour B. Durst, as Grantor, for the benefit of Douglas Durst (together, the "Douglas Durst Trusts").

24.     Upon information and belief, the Douglas Durst Trusts own shares and/or interests in:  (i) DBC; (ii) 733 Properties; (iii) Durst Square; (iv) Durst 14; (v) EPP; (vi) the Durst Organization; and (vii) Durst Development.

25.     The trustees for Jonathan Durst's Trusts are also the Trustees of Robert Durst's Trusts.

26.     Likewise, two of the Trustees of Robert Durst's Trusts, Siegler and Douglas Durst, act as trustees for Douglas Durst's Trusts.

**The Trusts Expressly Grant Robert Durst Unrestricted Testamentary Limited Powers of Appointment to His Wife**

27.     Each of the May 1962 Trust and the December 1962 Trust Agreements provides Robert Durst with a testamentary limited power to appoint the trust principal to any member of a particular class consisting of:  (i) his wife (or spouse);

(ii) his issue; (iii) spouses of his issue; and/or (iv) the issue of his grandfather, Joseph

Durst.

28.     In pertinent part, Article First, Paragraph (D) of the May 1962 Trust

Agreement states:

> (D)     Upon the death of ROBERT DURST the
> remaining principal shall be disposed of as he may
> appoint by his Last Will, but only to or in favor of one
> or more persons within a group consisting of: his
> wife, his issue and issue of the Grantor's father,
> Joseph Durst (provided, however, that issue of
> JOSEPH DURST shall not include the Grantor, or the
> estate of ROBERT DURST or the creditors of
> ROBERT DURST or creditors of his estate).  So much
> of the principal as is not effectively appoint by
> ROBERT DURST pursuant to the foregoing
> provisions shall pass on his death to his then living
> issue, in equal shares per stirpes or in default of such
> issue to the Grantor's then living issue, in equal
> shares per stirpes, or in default thereof, to the then
> living issue, in equal shares per stirpes, of the
> Grantor's father JOSEPH DURST (but if the Grantor
> is then living, distributions shall be made as if the
> Grantor were then deceased) or in default of such
> issue, to THE DURST FOUNDATION, INC.

See Exhibit A at 4-5 (capitals in original) (emphasis added).

29.     According to the May 1962 Trust Agreement, Robert Durst may

exercise his power of appointment either outright or in trust.  Article Eighth thus provides

in pertinent part:

> In exercising the power, the donee may appoint
> outright or in trust and may grant further powers to
> appoint, provided that beneficial interests may not be
> appointed at any time in favor of a person who is not
> within the group to whom the donee of the power may
> appoint.

See Exhibit A at 19.

30.     The December 1962 Trust Agreement also authorizes Robert Durst

to exercise his testamentary limited power of appointment in favor of his spouse, among

others.  In particular, Article First, Paragraph (E) provides in relevant part:

> Upon the death of ROBERT DURST, the remaining
> principal shall be disposed of as he may appoint by
> his Last Will, but only to or in favor of one or more
> persons within a group consisting of:  his spouse, his
> issue, spouses of his issue, and issue of the Grantor's
> father, JOSEPH DURST, (provided, however, that
> issue of JOSEPH DURST shall not include the
> Grantor, or the estate of ROBERT DURST or the
> creditors of ROBERT DURST or creditors of ROBERT
> DURST'S estate).  So much of the principal as is not
> effectively appointed by ROBERT DURST pursuant to
> the foregoing provisions shall pass on his death to
> Robert Durst's then living issue, in equal shares per
> stirpes or in default of such issue to the Grantor's then
> living issue, in equal shares per stirpes, or in default
> thereof, also to the then living issue, in equal shares
> per stirpes, of the Grantor's father, JOSEPH DURST
> (But if the Grantor is then living, distributions shall be
> made as if the Grantor were then deceased) or in
> default of such issue, also to THE DURST
> FOUNDATION, INC.

See Exhibit B at 2-3 (capitals in original) (emphasis added).

31.     Article Eighth of the December 1962 Trust Agreement further states

that:

> In exercising the power, the donee may appoint
> outright or in trust and may grant further powers to
> appoint, provided that beneficial interests may not be
> appointed at any time in favor of a person who is not
> within the group to whom the donee of the power may
> appoint.

See Exhibit B at 19.

32.     Neither of the Trust Agreements otherwise limits the right of Robert

Durst to exercise his testamentary limited powers of appointment.

33.     Nor do either of the Trust Agreements authorize the Trustees to enter into any agreement or take any action that would restrict Robert Durst's testamentary limited powers of appointment.

34.     The express intent of Seymour Durst, as reflected by the explicit terms of the May 1962 and December 1962 Trust Agreements, was to thereby grant Robert Durst the right to exercise his testamentary limited powers to appoint, upon his death, principal under each of the Trusts by express provision under his last will and testament – including disposition of any shares comprising the Trust Business Interests – to any person who is a member of the permissible class of appointees, which includes his Wife.

### Robert Durst Marries

35.     On or about December 11, 2000, Robert Durst was married in a private ceremony.

36.     At the time, and up to and including October 9, 2001, no Durst family member was aware of the marriage.

37.     On October 9, 2001, Robert Durst was arrested and charged with the murder of a Texas neighbor, Morris Black.  Robert Durst pleaded not guilty and was acquitted.  The arrest of Robert Durst created a flurry of national media attention among newspapers, television broadcasting stations and other news sources.

38.     Shortly after October 9, 2001, members of the Durst family, including the Trustees, first became aware of Robert Durst's marriage, when press reports regarding Robert Durst's arrest made the marriage public.

39.     If Robert Durst was not married, and since he has no children, the then principal of the Trusts would pass to Joseph Durst's "then living issue in equal shares," i.e., the twelve other grandchildren of Joseph Durst, who are beneficiaries of the Other Durst Family Trusts, including Robert Durst's cousin, Jonathan Durst and brother, Douglas Durst.

40.     Therefore, the news of Robert Durst's marriage had significant financial implications for Robert Durst's relatives, including his siblings.

### The Trustees Improperly Endeavor to Restrict Robert Durst's Testamentary Powers

41.     Upon learning of Robert Durst's marriage, the Trustees immediately undertook a series of actions specifically designed to restrict Robert Durst from exercising his testamentary limited powers of appointment and disposition of the Trust Business Interests in favor of his Wife, as otherwise authorized by the Trust Agreements.

### The Purported Restrictions Affecting the May 1962 Trust

42.     On October 15, 2001, the Trustees entered into a Shareholders' Agreement purportedly on behalf of Robert Durst's Trusts and Other Durst Family Trusts with:  (i) DBC; and (ii) 733 Properties (the "Shareholders' Agreement"), a copy of which is annexed hereto as Exhibit "C".

43.     Among other things, the Shareholders' Agreement endeavors to restrict and/or condition the right of Robert Durst to freely dispose of his May 1962 Trust Business Interests to his Wife, and nullify any transfer that does not comply with the Shareholders' Agreement.

44.     In particular, Article 2.1 of the Shareholders' Agreement states:

> During the term of this Agreement, <u>a Shareholder shall not</u>, either directly or indirectly, sell, assign, distribute, mortgage, hypothecate, transfer, pledge, create a security interest or lien upon, encumber, gift, or otherwise dispose of (hereinafter "transfer") all or any Shares (or any interest or rights therein), whether by operation of law or otherwise, <u>except as provided in Section 2.2 and 2.3 below. Any purported transfer in any manner in violation of this Agreement shall be null and void.</u>

<u>See</u> Exhibit C (emphasis added).

45.     Article 2.3 of the Shareholders' Agreement further provides:

> Each Shareholder may, without the approval of the other Shareholders, transfer some or all of his, her or its Shares by Will, by descent as a result of intestacy, by the terms of a trust agreement, by exercise of a power of appointment, or by sale, assignment, gift or other disposition to (a) one or more Members of the Durst Family, or (b) a trust or trusts of which one or more Members of the Durst Family <u>and/or the spouse of a Member of the Durst Family are the sole beneficiaries, provided that (i) from the inception of the trust and continuously thereafter at least fifty percent (50%) of the trustees of such trust are Members of the Durst Family and (ii) any subsequent beneficiary, remainderman or other transferee of or under such trust, whether by Will, laws of intestacy, the terms of the trust agreement, exercise of a power of appointment, gift, sale or otherwise, must be a Member of the Durst Family or another trust that meets the requirements of this clause (b), and the trust instrument or Will must so specify.</u>

<u>See</u> Exhibit C (emphasis added).

46.     Article 1 of the Shareholders' Agreement limits the definition of "Members of the Durst Family" to "a lineal descendent of Joseph Durst." <u>See</u> Exhibit C.

47.     In direct contravention of the May 1962 Trust Agreement, the Shareholders' Agreement thus attempts to restrict, condition or otherwise affect Robert

Durst's testamentary powers. In the event Robert Durst chooses to appoint the May 1962 Trust Business Interests directly to his Wife, the Shareholders' Agreement effectively precludes any such distribution. Alternatively, if Robert Durst chooses to appoint the May 1962 Trust Business Interests through his will to a trust under which his Wife is a beneficiary, the Shareholders' Agreement has the effect of imposing the following restrictions: (i) any trust by Robert Durst naming his Wife as the beneficiary of the May 1962 Trust Business Interests must also name lineal descendents of Joseph Durst, as, at least, 50% of the trustees for such trust; and (ii) any distribution from the May 1962 Trust Business Interests can only be made to a lineal descendent of Joseph Durst, or to another trust, providing such other trust conforms to the same testamentary restrictions imposed by the Shareholders' Agreement.

48.     Additionally, should Robert Durst appoint to his Wife the May 1962 Trust Business Interests in a manner that is entirely consistent with the testamentary powers expressly granted to him by the May 1962 Trust, the Shareholders' Agreement purports to require a forced sale of the May 1962 Trust Business Interests to either DBC or 733 Properties, or their designees, at their option. Indeed, the Shareholders' Agreement even seeks to afford DBC and 733 Properties, and/or their designees, the discretion whether to pay the proceeds of such a sale to the transferring Shareholder, the non-permitted transferee, or both.

49.     Section 2.5 of the Shareholders' Agreement provides in pertinent part:

> (a)     If all or any portion of a Shareholder's Shares are transferred by operation of law or otherwise <u>to a person other than a permitted transferee pursuant to Sections 2.2 or 2.3 hereof</u>, including a transfer to the

> committee, guardian or conservator of an
> incapacitated Shareholder if such committee,
> guardian or conservator includes a person who is not
> a Member of the Durst Family or to a trustee in
> bankruptcy of a Shareholder, then in addition to all
> other remedies available to the Corporations,
> <u>including the right to declare such transfer null and
> void, DBC or 733, as the case may be, or its
> designee, shall have the right at its option to purchase
> some or all of the Shares so transferred</u> (the
> "Transferred Shares") at their appraised fair market
> value and on the terms as determined in accordance
> with the succeeding paragraph.  DBC or 733, as the
> case may be, shall have one year from the date it
> receives written notice of such transfer to exercise
> such option.

<u>See</u> Exhibit C (emphasis added).

50.     The other shareholders of DBC and 733 Properties include, among

others, the Jonathan Durst Trust and the Douglas Durst Trust.

51.     Moreover, under the Shareholders' Agreement, the price to be paid

for any such forced sale of the May 1962 Trust Business Interests is to be (i) based on a

value unilaterally determined by an appraiser exclusively selected by the Durst family

(through their management control of DBC and 733 Properties) without permitting any

corroborating or competing valuation by an appraiser selected by the May 1962 Trust,

the estate of Robert Durst and/or his Wife; (ii) at a discount; and (iii) paid over a period

of time as long as twenty (20) years.

52.     In relevant part, Section 2.5 of the Shareholders' Agreement

continues as follows:

> (b)     <u>DBC or 733, as the case may be, shall appoint
> an appraiser</u> knowledgeable in real estate matters to
> determine the fair market value of the Transferred
> Shares.  Within thirty days of his selection, the
> appraiser shall deliver to DBC or 733, as the case
> may be his appraisal setting forth such fair market

value.  In making the appraisal, the appraiser shall
take into account discounts for a minority interest and
for lack of marketability.  The transferring Shareholder
and/or the non-permitted transferee shall be required
to sell the Transferred Shares at the appraised fair
market value as so determined by such appraisal.
Such purchase price shall be paid in cash over such
period of time (not to exceed twenty years from the
date of the closing) as DBC or 733, as the case may
be, shall determine and with interest on the deferred
balance at the appropriate Applicable Federal Rate as
determined pursuant to Section 1274(d) of the
Internal Revenue Code.  The closing shall occur not
later than thirty days following the submission of the
appraisal, such date to be selected by DBC or 733, as
the case may be.

See Exhibit C (emphasis added).

53.     Prior to October 15, 2001, neither DBC nor 733 Properties was
subject to a shareholders' agreement, or any other agreement that in any way restricted
Robert Durst's testamentary limited power of appointment granted by the May 1962
Trust.

54.     At no time prior to October 15, 2001 did the Trustees ever disclose
to, inform or otherwise discuss the Shareholders' Agreement, or its purported effect on
the testamentary rights afforded by the May 1962 Trust, with Robert Durst.

55.     Robert Durst never reviewed, signed, consented to or ratified the
Shareholders' Agreement, or the Trustees' efforts to bind the May 1962 Trust or the
May 1962 Trust Business Interests.

56.     Douglas Durst signed the Shareholders' Agreement not only in his
capacity as one of the Trustees, but also in his role as President of both DBC and 733
Properties.

57.    Siegler knew of the personal interests of Jonathan Durst and Douglas Durst in attempting to restrict Robert Durst's testamentary powers under the May 1962 Trust, and of their possible conflicts of interest, but nevertheless approved and executed the Shareholders' Agreement, which, upon information and belief, he or his firm, Stroock, drafted.

## The Purported Restrictions Affecting the December 1962 Trust

58.    The Trustees also simultaneously attempted to impose similar restrictions on Robert Durst's testamentary rights under the December 1962 Trust by amending the operating agreements of each of the entities in which the December 1962 Trust owns an interest.

### (a)    Durst Square Partners, LLC Amendment

59.    Section 7.2(c) of the Operating Agreement of Durst Square, made as of September 4, 1996, as amended and restated as of October 15, 2001 (a copy of which is annexed hereto as Exhibit "D"), provides:

> Each Member may, without the approval of the Manager or any of the Members, transfer all or any part of his Membership Interest by Will, by descent as a result of intestacy, by the terms of a trust instrument, by exercise of a power of appointment, or by sale, assignment, gift or other disposition to (1) one or more members of the Durst family (as defined in Section 7.2(e)), or (2) a trust or trusts of which one or more members of the Durst family (as defined in Section 7.2(e)) and/or a spouse of a member of the Durst family (as defined in Section 7.2(e)) are the sole beneficiaries, provided that (i) from the inception of the trust and continuously thereafter at least fifty percent (50%) of the trustees of such trust are the Member or members of the Durst family (as defined in Section 7.2(e)) and (ii) any subsequent beneficiary, remainderman or other transferee of or under such trust, whether by Will, laws or intestacy, the terms of

the trust agreement, exercise of a power of
appointment, gift, sale or otherwise, must be a
member of the Durst family (as defined in Section
7.2(e)) or another trust that meets the requirements of
this clause (2), and the trust instrument or Will must
so specify. Any permitted transferee receiving all or
any part of the Member's Membership Interest as a
result of the foregoing shall be substituted as a
Member, subject to all of the terms and conditions of
this Agreement.

See Exhibit D at 19-20 (emphasis added).

60.     Moreover, Section 7.2(d) states:

(1)     If all or any portion of a Member's Membership
Interest is transferred by operation of law or otherwise
to a person other than a permitted transferee
pursuant to clauses (b) or (c) of this Section, including
a transfer to the committee, guardian or conservator
of an incapacitated Member if such committee,
guardian or conservator includes a person who is not
a member of the Durst Family (as defined in Section
7.2(e)) or to a trustee in bankruptcy of a Member,
then in addition to all other remedies available to the
Company, including the right to declare such transfer
null and void, the Company, or its designee, shall
have the right at its option to purchase all or a portion
of the Membership Interest so transferred (the
"Transferred Interest") at its appraised fair market
value and on the terms as determined in accordance
with the succeeding paragraph. The Company shall
have one year from the date it receives written notice
of such transfer to exercise such option.

(2)     The Manager shall appoint an appraiser
knowledgeable in real estate matters to determine the
fair market value of the Transferred Interest. Within
thirty days of his selection, the appraiser shall deliver
to the Manager his appraisal setting forth such fair
market value. In making the appraisal, the appraiser
shall take into account discounts for a minority
interest and for lack of marketability. The transferring
Member and/or the non-permitted transferee shall be
required to sell the Transferred Interest at the
appraised fair market value as so determined by such

appraisal.  <u>Such purchase price shall be paid in cash
over such period of time (not to exceed twenty years
from the date of the closing) as the Manager shall
determine</u> and with interests on the deferred balance
at the appropriate Applicable Federal Rate as
determined pursuant to Section 1274(d) of the
Internal Revenue Code.  The closing shall  occur not
later than thirty days following the submission of the
appraisal, such date to be selected by the Manager.

<u>See</u> Exhibit D at 20 (emphasis added).

61.     Like the Shareholders' Agreement, Section 7.2(e) confines the

definition of a member of the Durst family to "a lineal descendent of Joseph Durst." <u>See</u>

Exhibit D at 21.

62.     Prior to October 15, 2001, Durst Square was not subject to any

operating agreement or any other agreement that restricted the testamentary powers

granted Robert Durst by the December 1962 Trust.

63.     Moreover, Douglas Durst signed the October 13, 2001 amendment

to Durst Square's operating agreement not only as one of the Trustees, but also in his

capacity as President of DBC, 733 Properties, and the Durst Organization.  <u>See</u> Exhibit

D at 30.

## (b)     <u>Durst 14 Investors, LLC Amendment</u>

64.     The Operating Agreement of Durst 14, made as of October 31,

2000, as amended and restated as of October 15, 2001 (a copy of which is annexed

hereto as Exhibit "E"), similarly states in Section 5.2(c):

Each Member may, without the approval of the
Manager or any of the Members, transfer all or any
part of his Membership Interest by Will, by descent as
a result of intestacy, by the terms of a trust
instrument, by exercise of a power of appointment, or
by sale, assignment, gift or other disposition to (1)
one or more members of the Durst family (as defined

in Section 5.2(e)), or (2) a trust or trusts of which one or more members of the Durst family (as defined in Section 5.2(e)) <u>and/or a spouse of a member of the Durst family (as defined in Section 5.2(e)) are the sole beneficiaries, provided that (i) from the inception of the trust and continuously thereafter at least fifty percent (50%) of the trustees of such trust are the Member or members of the Durst family (as defined in Section 5.2(e)) and (ii) any subsequent beneficiary, remainderman or other transferee of or under such trust, whether by Will, laws of intestacy, the terms of the trust agreement, exercise of a power of appointment, gift, sale or otherwise, must be a member of the Durst family (as defined in Section 5.2(e)) or another trust that meets the requirements of this clause (2), and the trust instrument or Will must so specify.</u> Any permitted transferee receiving all or any part of the Member's Membership Interest as a result of the foregoing shall be substituted as a Member, subject to all the terms and conditions of this Agreement.

<u>See</u> Exhibit E at 8 (emphasis added).

65. Section 5.2(d) further provides:

(1) If all or any portion of a Member's Membership Interest is transferred by operation of law or otherwise to a person other than a permitted transferee pursuant to clauses (b) or (c) of this Section, including a transfer to the committee, guardian or conservator of an incapacitated Member if such committee, guardian or conservator includes a person who is not a member of the Durst Family (as defined in Section 5.2(e)) or to a trustee in bankruptcy of a Member, then in addition to all other remedies available to the Company, <u>including the right to declare such transfer null and void, the Company, or its designee, shall have the right at its option to purchase all or a portion of the Membership Interest so transferred (the "Transferred Interest") at its appraised fair market value and on the terms as determined in accordance with the succeeding paragraph.</u> The Company shall have one year from the date it receives written notice of such transfer to exercise such option.

>   (2)   The Manager shall appoint an appraiser
>   knowledgeable in real estate matters to determine the
>   fair market value of the Transferred Interest.  Within
>   thirty days of his selection, the appraiser shall deliver
>   to the Manager his appraisal setting forth such fair
>   market value.  In making the appraisal, the appraiser
>   shall take into account discounts for a minority
>   interest and for lack of marketability.  The transferring
>   Member and/or the non-permitted transferee shall be
>   required to sell the Transferred Interest at the
>   appraised fair market value as so determined by such
>   appraisal.  Such purchase price shall be paid in cash
>   over such period of time (not to exceed twenty years
>   from the date of the closing) as the Manager shall
>   determine and with interests on the deferred balance
>   at the appropriate Applicable Federal Rate as
>   determined pursuant to Section 1274(d) of the
>   Internal Revenue Code.  The closing shall  occur not
>   later than thirty days following the submission of the
>   appraisal, such date to be selected by the Manager.

See Exhibit E at 9-10 (emphasis added).

66.    Section 5.2(e) states "For purposes of the Agreement, a member of
the Durst family means a lineal descendent of Joseph Durst."  See Exhibit E at 10.

67.    Prior to October 15, 2001, Durst 14 was not subject to any
operating agreement or any other agreement that restricted Robert Durst's testamentary
limited powers granted by the December 1962 Trust.

68.    Douglas Durst executed the October 15, 2001 amendment to Durst
14's operating agreement not only as one of the Trustees, but also in his capacity as
President of the Durst Organization.  See Exhibit E at 18.

### (c)    The Eastern Pork Products Company, LLC Amendment

69.    The Operating Agreement of EPP also was amended and restated
as of October 15, 2001 (a copy of which is annexed hereto as Exhibit "F"), and provides
in Section 5.2(c) that:

Each Member may, without the approval of the Manager or any of the Members, transfer all or any part of his Membership Interest by Will, by descent as a result of intestacy, by the terms of a trust instrument, by exercise of a power of appointment, or by sale, assignment, gift or other disposition to (1) one or more members of the Durst family (as defined in Section 5.2(e)), or (2) a trust or trusts of which one or more members of the Durst family (as defined in Section 5.2(e)) and/or a spouse of a member of the Durst family (as defined in Section 5.2(e)) are the sole beneficiaries, provided that (i) from the inception of the trust and continuously thereafter at least fifty percent (50%) of the trustees of such trust are the Member or members of the Durst family (as defined in Section 5.2(e)) and (ii) any subsequent beneficiary, remainderman or other transferee of or under such trust, whether by Will, laws of intestacy, the terms of the trust agreement, exercise of a power of appointment, gift, sale or otherwise, must be a member of the Durst family (as defined in Section 5.2(e)) or another trust that meets the requirements of this clause (2), and the trust instrument or Will must so specify. Any permitted transferee receiving all or any part of the Member's Membership Interest as a result of the foregoing shall be substituted as a Member, subject to all the terms and conditions of this Agreement.

See Exhibit F at 8 (emphasis added).

70.     Again, any attempt by Robert Durst to transfer any interest in a manner not in accordance with the alleged restrictions purports to nullify the transfer and trigger an option to purchase Robert Durst's interests.  In relevant part, Section 5.2(d) states:

(1)     If all or any portion of a Member's Membership Interest is transferred by operation of law or otherwise to a person other than a permitted transferee pursuant to clauses (b) or (c) of this Section, including a transfer to the committee, guardian or conservator of an incapacitated Member if such committee, guardian or conservator includes a person who is not

a member of the Durst Family (as defined in Section 5.2(e)) or to a trustee in bankruptcy of a Member, then in addition to all other remedies available to the Company, <u>including the right to declare such transfer null and void, the Company, or its designee, shall have the right at its option to purchase all or a portion of the Membership Interest so transferred (</u>the "Transferred Interest") <u>at its appraised fair market value and on the terms as determined in accordance with the succeeding paragraph</u>.  The Company shall have one year from the date it receives written notice of such transfer to exercise such option.

(2)     <u>The Manager shall appoint an appraiser</u> knowledgeable in real estate matters to determine the fair market value of the Transferred Interest.  Within thirty days of his selection, the appraiser shall deliver to the Manager his appraisal setting forth such fair market value.  <u>In making the appraisal, the appraiser shall take into account discounts for a minority interest and for lack of marketability</u>.  The transferring Member and/or the non-permitted transferee shall be required to sell the Transferred Interest at the appraised fair market value as so determined by such appraisal.  <u>Such purchase price shall be paid in cash over such period of time (not to exceed twenty years from the date of the closing) as the Manager shall determine</u> and with interests on the deferred balance at the appropriate Applicable Federal Rate as determined pursuant to Section 1274(d) of the Internal Revenue Code.  The closing shall  occur not later than thirty days following the submission of the appraisal, such date to be selected by the Manager.

<u>See</u> Exhibit F at 9 (emphasis added).

71.     Once again, Section 5.2(e) states that "a member of the Durst family means a lineal descendent of Joseph Durst."  <u>See</u> Exhibit F at 10.

72.     Prior to October 15, 2001, EPP was not subject to any operating agreement or any other agreement that restricted the testamentary powers granted Robert Durst by the December 1962 Trust.

73.     Douglas Durst signed the October 15, 2001 amendment to EPP's operating agreement not only in his capacity as one of the Trustees, but also as President of the Durst Organization.  See Exhibit F at 16-17.

(d)     **The Durst Organization, L.P. and Durst Development, LLC Amendments**

74.     Upon information and belief, on or about October 15, 2001, the Trustees executed amendments to the operating agreements of the Durst Organization and Durst Development that contained the same or substantially similar restrictions on Robert Durst's testamentary transfer rights.  (The October 15, 2001 Amendments to the Operating Agreements of Durst Square, Durst 14, EPP, Durst Organization and Durst Development collectively are referred to as the "October 15, 2001 Amendments" and are incorporated herein by reference).

75.     Prior to October 15, 2001, upon information and belief, neither the Durst Organization nor Durst Development was subject to any operating agreement or any other agreement that restricted the testamentary powers granted Robert Durst by the December 1962 Trust.

76.     The October 15, 2001 Amendments thus directly contravene the December 1962 Trust Agreement and attempt to restrict, condition or otherwise affect Robert Durst's testamentary powers by, among other things:  (i) effectively precluding any direct appointment of the December 1962 Trust Business Interests to his Wife; (ii) requiring any trust by Robert Durst naming his Wife as the beneficiary of the December 1962 Trust Business Interests to also name lineal descendents of Joseph Durst, as, at least, 50% of the trustees for such trust; and (iii) requiring that any distribution from the December 1962 Trust Business Interests only be made to a lineal descendent of

Joseph Durst, or to another trust, providing such other trust conforms to the same testamentary restrictions imposed by the October 15, 2001 Amendments.

77.     Further, in the event Robert Durst appoints to his Wife the December 1962 Trust Business Interests in a manner that is entirely consistent with the testamentary powers expressly granted to him by the December 1962 Trust, the October 15, 2001 Amendments also purport to afford other Durst family members the discretion to force a sale of the December 1962 Trust Business Interests (i) based on a value unilaterally determined by an appraiser exclusively selected by the Durst family (through their management control) without permitting any corroborating or competing valuation by an appraiser selected by the December 1962 Trust, the estate of Robert Durst and/or his Wife; (ii) at a discount; and (iii) paid over a period of time as long as twenty (20) years.

78.     Moreover, like the Shareholders' Agreement, the October 15, 2001 Amendments too attempt to afford other Durst family members the discretion whether to pay the proceeds of such a sale to the transferring Shareholder, the non-permitted transferee, or both.

79.     Robert Durst never reviewed, signed, consented to or ratified the October 15, 2001 Amendments, or the Trustees' efforts to bind the December 1962 Trust or the December 1962 Trust Business Interests.

80.     Siegler knew of the personal interests of Jonathan Durst and Douglas Durst in attempting to restrict Robert Durst's testamentary powers under the December 1962 Trust, and of their potential conflict of interest, but nevertheless also

approved and executed the October 15, 2001 Amendments, which, upon information
and belief, he or his firm, Stroock, drafted.

**Robert Durst Objects to the Trustees' Efforts to Restrict His Testamentary
Rights Under the Trusts**

       81.    Upon learning of the Trustees' actions, Robert Durst notified the
Trustees that he did not in any way consent to or ratify the purported restrictions on his
testamentary rights under the Trusts by the Shareholders' Agreement or the October
15, 2001 Amendments.

       82.    In particular, by letter dated May 12, 2003 (a copy of which is
annexed hereto as Exhibit "G"), counsel for Robert Durst informed the Trustees that
Robert Durst considered the Shareholders' Agreement to be null and void:

> We hereby notify the Trustees, DBC and 733, that
> Robert does not ratify or give consent to the actions of
> the Trustees in entering into Shareholders'
> Agreement, nor does he ratify or give consent to any
> of the terms, restrictions and conditions purportedly
> imposed by said Shareholders' Agreement or any
> actions that may have been undertaken by the
> Trustees or others in reliance upon said terms,
> restrictions and conditions.  Accordingly, we hereby
> notify the Trustees, DBC and 733, on behalf of Robert
> Durst, that we consider said Shareholders' Agreement
> and the Trustees' actions upon entering into said
> Shareholders' Agreement, to be null and void and to
> have no force or effect upon his rights, interests and
> power as a beneficiary of said Trust.

See Exhibit G.

       83.    By separate letter, also dated May 12, 2003 (a copy of which is
annexed hereto as Exhibit "H"), counsel for Robert Durst similarly informed the Trustees
that Robert Durst considered the October 15, 2001 Amendments to be null and void
(together, the May 12, 2003 letters are referred to as the "May 12 Objections"):

> We hereby notify the Trustees and the entities copied
> below in which interests are held by the Trust,
> including, but not limited to, Durst Square, Durst 14
> and EPP, that Robert Durst does not ratify or give
> consent to the actions of the Trustees in entering into
> said Operating Agreements or other similar
> agreements affecting the remaining entities, nor does
> he ratify or give consent to any of the terms,
> restrictions and conditions purportedly imposed by
> said Operating Agreements (or by other similar
> agreements affecting the remaining entities) or any
> actions that may have been undertaken by the
> Trustees or others in reliance upon said terms,
> restrictions and conditions.

See Exhibit H.

84.     The May 12 Objections also advised the Trustees that Robert Durst

believed the Trustees Jonathan Durst and Douglas Durst, themselves Other Durst

Family Trust beneficiaries, had acted with a conflict of interest and/or in their own self-

interests.  See Exhibits G, H.

85.     Subsequently, by letter dated May 30, 2003, incorporated herein by

reference, the Trustees refused to reconsider their actions with respect to Robert

Durst's Trusts:

> We appreciate that Robert Durst did not ratify the
> signing of the shareholders agreement.  However,
> ratification by Robert Durst was not called for under
> the terms of the Trust instrument, and the fact that he
> did not ratify the signing of the shareholders
> agreement certainly does not render it null and void.

86.     In addition, by the same letter, the Trustees informed Robert Durst

that "they intend zealously to defend their actions, which were taken for the benefit of all

of the beneficiaries of all of the trusts." (emphasis added).  Again, these beneficiaries

include two of Robert Durst's Trustees, Jonathan Durst and Douglas Durst.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment That The Actions By The Trustees With Respect To The Robert Durst Trusts Are Void Pursuant To EPTL § 7-2.4)

87.   Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 86, as if fully set forth herein.

88.   The Trusts and Trust Agreements expressly authorize Robert Durst to freely exercise his testamentary limited powers of appointment and to dispose of the Trust Business Interests to his Wife.

89.   New York's EPTL § 10-5.1 provides:

> The scope of the donee's authority as to appointees and as to the time and manner of the appointment is unlimited except as the donor manifests a contrary intention.

90.   The Trustees have an obligation to, at all times, act in a manner that is consistent with the Trusts and the Trust Agreements.

91.   New York's EPTL § 7-2.4 states:

> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

92.   The Trustees' actions, allegedly on behalf of the Trusts with respect to the Shareholders' Agreement and the October 15, 2001 Amendments, which purport to restrict, condition or otherwise affect Robert Durst's testamentary rights under the Trusts and/or Trust Agreements, directly contravene the express terms of the Trusts and create an actual and justiciable controversy between Robert Durst and the Trustees.

93.    Robert Durst, therefore, seeks a declaration by this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and EPTL § 7-2.4, that any terms, restrictions and/or conditions in the Shareholders' Agreement and/or the October 15, 2001 Amendments purportedly imposed upon or affecting Robert Durst's testamentary limited powers of appointment are void.  Such a judicial declaration is necessary and appropriate at this time under the circumstances alleged.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment That The Actions By The Trustees With Respect To Robert Durst's Trusts Are Voidable by Robert Durst)

94.    Plaintiff repeat and realleges every allegation contained in the paragraphs 1 through 93, as if fully set forth herein.

95.    As set forth above, the Trustees improperly engaged in self-dealing and with a clear conflict of interest by entering into the Shareholders' Agreement and October 15, 2001 Amendments purportedly on behalf of Robert Durst's Trusts.

96.    As beneficiaries of Durst family trusts themselves, Jonathan Durst and Douglas Durst improperly are attempting to secure future control over and ownership of the Trust Business Interests.

97.    Absent the Shareholders' Agreement and October 15, 2001 Amendments, Robert Durst would be able to appoint the property of the Trusts outright to his Wife, and thereby forever remove the property from Durst family control.

98.    Likewise, Siegler was acting to further the interests of his law firm and secure favorable status as legal counsel to Jonathan Durst, Douglas Durst and/or the Durst family.

99.     Robert Durst never consented to or ratified any of the actions by the Trustees relating to the Shareholders' Agreement and/or the October 15, 2001 Amendments, and, in fact, by and through the May 12 Objections, formally opposed such actions.

100.     By reason of the foregoing, an actual and justiciable controversy exists between Robert Durst and the Trustees as to whether the actions by the Trustees with respect to the Shareholders' Agreement and the October 15, 2001 Amendments placed the interests of the Trustees in conflict with the interests of Robert Durst and/or were accompanied by self-dealing, thus rendering such actions voidable by Robert Durst.

101.     Robert Durst, therefore, seeks a declaration by this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*, that because the Trustees acted with a conflict of interest and/or in their own self-interest, any terms, restrictions or conditions in the Shareholders' Agreement and the October 15, 2001 Amendments purportedly imposed upon or affecting Robert Durst's testamentary limited powers of appointment are voidable by Robert Durst.  Such a judicial declaration is necessary and appropriate at this time under the circumstances alleged.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Trust Agreements)**

102.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 101, as if fully set forth herein.

103.     The Trust Agreements constitute valid and enforceable contracts supported by good and adequate consideration.

104.    Robert Durst is an intended beneficiary of the Trusts and/or the Trust Agreements.

105.    As detailed above, the Trustees materially breached the terms of the Trust Agreements by, among other things: (i) failing to administer the Trusts in a manner consistent with the wishes of Seymour Durst, and, in particular, by attempting to frustrate Robert Durst's testamentary limited powers of appointment of the Trust Business Interests to his Wife; (ii) failing to disclose to Robert Durst the restrictions or conditions on his testamentary rights purportedly imposed by the Shareholders' Agreement and the October 15, 2001 Amendments; and/or (iii) failing to administer the Trusts consistent with Robert Durst's interests as life beneficiary of the Trusts.

106.    In addition, the Trustees independently breached their contractual duties by acting with a conflict of interest and/or in their own self-interest.

107.    More specifically, Jonathan Durst and Douglas Durst attempted to secure future control over and ownership of the Trust Business Interests for their own benefit, as members of the Durst family, beneficiaries of Other Durst Family Trusts, and shareholders in DBC, 733 Properties, Durst Square, Durst 14, EPP, the Durst Organization, and Durst Development.

108.    The possibility of conflicts of interest also arose because Jonathan Durst and Douglas Durst also simultaneously held management positions in the entities in which the Trusts maintained interests.

109.    By executing, assenting to and, upon information and belief, drafting, either personally or through his firm, the Shareholders' Agreement and the October 15, 2001 Amendments, Siegler too acted with a conflict of interest (or the

possibility thereof) and/or in furtherance of his own personal interests.  Despite knowing of Jonathan Durst's and Douglas Durst's conflicts of interest and self-dealing, Siegler nevertheless acceded to their actions because Siegler's law firm, Stroock, has been long-time legal counsel to Jonathan Durst, Douglas Durst, and/or the Durst family, and Siegler was endeavoring to secure the relationship and garner more business between his law firm and the Durst family and/or the entities they control, own or manage.

110.    As a direct and proximate result of the Trustee's breaches, Robert Durst has been damaged in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

111.    Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 110, as if fully set forth herein.

112.    By virtue of their positions as Trustees of the May 1962 and December 1962 Trusts, Siegler, Jonathan Durst and Douglas Durst each is a fiduciary to Robert Durst.

113.    As fiduciaries, the Trustees each owed and continue to owe Robert Durst the duty to at all times act with the utmost good faith, loyalty and care.

114.    The duty of loyalty owed by the Trustees to Robert Durst is absolute and undivided.

115.    The Trustees are bound to administer the Trusts solely in the interests of Robert Durst as a life beneficiary of the Trusts.

116.    Similarly, the Trustees are charged with the duty to carry out the wishes of Seymour Durst, as reflected in the Trusts and the Trust Agreements, with absolute fidelity and without any partiality between beneficiaries.

117.   The Trustees are prohibited from placing themselves in a position where their own personal interests will or potentially will come in conflict with the interests of Robert Durst.

118.   The Trustees each breached the fiduciary obligations owed to Robert Durst by, among other things:  (i) failing to administer the Trusts in a manner consistent with the wishes of Seymour Durst, and, in particular, by frustrating Robert Durst's testamentary limited powers of appointment of the Trust Business Interests to his Wife; (ii) failing to disclose to Robert Durst the restrictions or conditions on his testamentary rights purportedly imposed by the Shareholders' Agreement and the October 15, 2001 Amendments; and/or (iii) failing to administer the Trusts consistent with Robert Durst's interests as life beneficiary of the Trusts.

119.   In addition, the Trustees breached their fiduciary duties by creating the possibility of a conflict of interest with Robert Durst, acting with an actual conflict of interest, and/or acting in their own self-interest.

120.   More specifically, Jonathan Durst and Douglas Durst attempted to secure future control over and ownership of the Trust Business Interests for their own benefit, as members of the Durst family, beneficiaries of Other Durst Family Trusts, and shareholders in DBC, 733 Properties, Durst Square, Durst 14, EPP, the Durst Organization, and Durst Development.

121.   The possibility of conflicts of interest also arose because Jonathan Durst and Douglas Durst simultaneously held management positions in the entities in which the Trusts maintained interests.

122.    By executing, assenting to and, upon information and belief

drafting, either personally or through his firm, the Shareholders' Agreement and the

October 15, 2001 Amendments, Siegler too acted with a conflict of interest (or the

possibility thereof) and/or in furtherance of his own personal interests.  Despite knowing

of Jonathan Durst's and Douglas Durst's conflicts of interest and self-dealing, Siegler

nevertheless acceded to their actions because Siegler's law firm, Stroock, has been

long-time legal counsel to Jonathan Durst, Douglas Durst, and/or the Durst family, and

Siegler was endeavoring to secure the relationship and garner more business between

his law firm and the Durst family and/or the entities they control, own or manage.

123.    As a direct and proximate result of the Trustees' wrongful conduct,

breaches and failures to discharge their fiduciary duties, as alleged, Robert Durst has

been damaged in an amount to be determined at trial.

124.    Moreover, because the Trustees' actions were outrageous,

malicious and/or wanton, Robert Durst is entitled to an award of punitive damages in an

amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Breach of Duty of Good Faith and Fair Dealing)**

125.    Plaintiff repeats and realleges every allegation contained in

paragraphs 1 through 124, as if fully set forth herein.

126.    Under New York law, which governs the Trusts, a duty of good faith

and fair dealing is implicit in every contract, including the Trust Agreements.

127.    As set forth above, and incorporated herein, Robert Durst is the

intended beneficiary of the Trusts and/or the Trust Agreements.

128.    The Trustees breached their duty of good faith and fair dealing under the Trusts and the Trust Agreements by (i) acting in a manner that is in direct contravention of the express terms of the Trusts; and/or (ii) acting with a conflict of interest and/or in their own self-interest, as detailed above and incorporated herein.

129.    The Trustees thus have acted in bad faith, have not dealt fairly with Robert Durst, and have deprived Robert Durst of benefits to which he is entitled under the Trusts.

130.    As a direct and proximate result of the foregoing, Robert Durst has been damaged in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against Jonathan Durst and Douglas Durst Only)

131.    Plaintiff repeats and realleges every allegation contained in Paragraph 1 through 130, as if fully set forth herein.

132.    By virtue of their positions as Trustees of Robert Durst's Trusts, Jonathan Durst and Douglas Durst have purported to execute the Shareholders' Agreement and the October 15, 2001 Amendments and restrict, condition or otherwise affect Robert Durst's testamentary rights under the Trusts to further their own financial interests.

133.    Jonathan Durst and Douglas Durst thus unjustly used their position of trust and fidelity for their own benefit and at the expense of Robert Durst.

134.    As a direct and proximate result, Robert Durst has been damaged in an amount to be determined at trial.

## JURY DEMAND

135.    Plaintiff demands a trial by jury.


## PRAYER FOR RELIEF

WHEREFORE, plaintiff, Robert Durst respectfully requests judgment

against defendants Richard Siegler, Jonathan Durst and Douglas Durst as follows:

1.    With Respect to the First Cause of Action:

    (a)    Judgment in favor of Robert Durst and against Defendants;

    (b)    Declaring, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and EPTL § 7-2.4, that any terms, restrictions and/or conditions in the Shareholders' Agreement and/or the October 15, 2001 Amendments purportedly imposed upon or affecting Robert Durst's testamentary rights under the Trusts are void; and

    (c)    Such other, further and different relief as this Court deems just, proper and equitable, including, but not limited to, recovery of any surcharges as may be improperly imposed against the Trusts regarding legal fees and/or other expenses for the defense of this action.

2.    With Respect to the Second Cause of Action:

    (a)    Judgment in favor of Robert Durst and against Defendants;

    (b)    Declaring, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that because the Trustees acted with a conflict of interest and/or for their own self-interests, any terms, restrictions or conditions in the Shareholders' Agreement and the October 15, 2001 Amendments purportedly imposed upon or affecting Robert Durst's testamentary rights under the Trusts are voidable by Robert Durst; and

    (c)    Such other, further and different relief as this Court deems just, proper and equitable, including, but not limited to, recovery of any surcharges as may be improperly imposed against the Trusts regarding legal fees and/or other expenses for the defense of this action.

3.      With Respect to the Third, Fourth, Fifth and Sixth Causes of Action:

    (a)     Judgment in favor of Robert Durst and against Defendants;

    (b)     An accounting of:

        (i)      The May 1962 Trust;

        (ii)     The December 1962 Trust;

        (iii)    The Durst Buildings Corporation;

        (iv)     733 Properties, Inc.;

        (v)      Durst Square Partners, LLC;

        (vi)     Durst 14 Investors, LLC;

        (vii)    Eastern Pork Products Company, LLC;

        (viii)   The Durst Organization, L.P.;

        (ix)     Durst Development, LLC; and

        (x)      any and all other entities, properties, partnerships, corporations or funds in which defendants act as Trustees for Robert Durst;

    (c)     Damages in an amount to be determined at trial;

    (d)     Removal of the Trustees from the Trusts, pursuant to EPTL § 7-2.6(a)(2) and/or SCPA § 711;

    (e)     Appointment of new trustees for the Trusts, pursuant to EPTL § 7-2.6(a)(3);

    (f)     Reasonable attorneys' fees, the costs of suit and all expenses and disbursements incurred in this action;

    (g)     Pre and post-judgment interest the maximum rate allowed by law;

    (h)     With respect to the Fourth Cause of Action only, awarding punitive damages because of the outrageous, malicious and wanton conduct of the Trustees in an amount to be determined at trial; and

    (i)     Such other, further and different relief as this Court deems just, proper and equitable, including, but not limited to, recovery of any surcharges as may be improperly imposed against the Trusts regarding legal fees and/or other expenses for the defense of this action.

Dated:   New York, New York
         August 30, 2004


                              ANDERSON KILL & OLICK, P.C.


                              By: _____
                                  Lawrence Kill (LK-2685)
                                  Linda Gerstel (LG-7150)
                                      Todd D. Robichaud (TR-9284)
                              1251 Avenue of the Americas
                              New York, New York 10020
                              Tel:  212-278-1000

                              Attorneys for Plaintiff Robert Durst