

**Long Island**
3 Dakota Drive, Suite 300
Lake Success, NY 11042
516.328.2300 | P

ABRAMS FENSTERMAN, LLP
ATTORNEYS AT LAW

Long Island · Brooklyn · White Plains · Rochester · Albany

**Via ECF**

Hon. Judith C. McCarthy
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

> **SO ORDERED:**
>
> The LADA is directed to file a response to the issues raised in this letter by October 27, 2023. Plaintiffs' counsel is directed to immediately serve this Order on the LADA and file proof of service on the docket.
>
> _/s/ Judith C. McCarthy_  10-18-2023
> JUDITH C. McCARTHY
> United States Magistrate Judge

Re:   *Bamonte, et al v. Charatan, as Nominated Executor*
       File No. 7:22-cv-795-KMK-JCM

Dear Judge McCarthy:

    This office represents Plaintiffs in the above action. I write to respectfully request that the Court issue an order pursuant to Federal Rules of Civil Procedure 45(d)(2) compelling the Los Angeles County District Attorney's Office ("LADA") to respond to the so ordered non-party subpoena served on them on August 22, 2023, and for related relief. For the reasons set forth more fully below, this Court should grant Plaintiffs' motion.

## BACKGROUND AND PROCEDURAL HISTORY

    This action for wrongful death was commenced on January 31, 2022 against the Estate of Robert Durst for the murder of his wife Kathleen McCormack Durst ("Kathie") over 40 years ago. *See* Doc. Nos. 1-2. In or around May 2023, following the commencement of this present action, counsel for the Plaintiffs served a request for records on the LADA pursuant to the California Public Records Act ("PRA"). On May 19, 2023, Habib Balian, Esq., Assistant Head Deputy of the Major Crimes Division of LADA responded to the PRA request stating that some, but not all, of the requested records would be produced to the office of counsel for the Plaintiffs on or about June 5, 2023. Using boilerplate language, Mr. Balian informed Abrams Fensterman that some of the documents requested were protected under various California codes and regulations. Ultimately, LADA turned over 428 documents, pictures, and videos relating to the criminal trial against Robert Durst for the murder of Susan Berman. It was later determined that the scope of this production was limited to the exhibits introduced at the trial.

    On April 17, 2023, Defendant filed its answer with affirmative defenses. *See* Doc. No. 93, Answer. In particular, Defendant has asserted as and for her Eleventh Affirmative Defense that "[u]pon information and belief, the death of Kathleen Durst was caused by someone other than Robert Durst." *See id.* p. 6. Between May 2023 and September 2023, the parties have exchanged various document discovery and scheduled depositions of nonparty Douglas Durst and Defendant pursuant to Court orders. *See* Doc. Nos. 98, 108, 130, 139, 147, 151, 177, 181, 185. Additionally, pursuant to the revised and amended discovery schedule dated August 18,



2023 (and so ordered by the Court on August 21, 2023), all fact discovery is to be completed no later than January 19, 2024 and the Court made clear that "no more extensions will be granted." See Doc. No. 181.

On August 16, 2023, William Mack, counsel for the Defendant, notified Plaintiffs' counsel that he had been contacted by LADA and was advised that it had approximately 65 boxes worth of documents related to the Durst investigation and trial that would be destroyed unless the Estate requested their return. LADA offered to arrange for the boxes to be delivered by freight carrier to Mr. Mack. See Exhibit A, Email from William Mack, Esq. dated August 16, 2023 ("8/16/23 Email). Plaintiffs' counsel has been informed by Mr. Mack that their office has not received any documents from LADA to date.

Given the looming deadline for the completion of fact discovery and the deposition that has already been scheduled to be completed this month, Plaintiffs preemptively prepared and brought subpoenas to the FBI, Westchester County District Attorney's Office and the Los Angeles County District Attorney's Office to the status conference before Your Honor on August 17, 2023. See Doc Nos. 178-180. The subpoenas were returnable on September 18, 2023 and specifically sought, among other things, documents and communications with law enforcement and prosecuting agencies in connection with the murder of Susan Berman and the related trial in Los Angeles, California[1], as well as documents and communications concerning the investigation of Robert Durst in connection with the murder of Kathie and/or Susan Berman including but not limited to communications with any of Robert Durst's attorneys, law enforcement, prosecuting agencies and Debrah Charatan (Robert Durst's spouse) in connection with Plaintiffs' wrongful death claim against Mr. Durst's estate. See id.

On August 18, 2023, the Court having been previously provided with copies of the subpoenas and having heard an oral application during the August 17, 2023 status conference, so ordered the subpoenas for the documents being held by the LADA. See Doc. No. 180. Edwin M, Front Desk Intake Specialist, accepted service on August 22, 2023 and proof of service was filed on September 27, 2023. See Doc. No. 191. Despite confirming it was prepared to release sixty-five (65) boxes of documents prior to the issuance of a so ordered subpoena, once LADA was, in fact, served with the so ordered subpoena, they refused to produce any documents. On September 6, 2023, Defendant's counsel spoke with LADA and informed counsel for the Plaintiffs that he had been advised that LADA was now holding off on producing any documents until the subpoena response was completed.

Subsequent to LADA's conversation with Defendant's counsel, Plaintiffs' counsel was informed by LADA that they were working on producing certain documents in response to the subpoena. See Exhibit B, Email to Tomas Guteress, Esq. dated September 15, 2023 ("9/15/23 Email"). However, no documents have been received to date. By email dated September 18, 2023, LADA served its response and objected to the production of documents alleging that Plaintiffs failed to comply with the requirements of Federal Rules of Civil Procedure ("FCRP")

---

[1] *People v. Robert Durst*, Los Angeles Superior Court, Case No. SA089983-01.



45, and/or the proper service requirements pursuant to FRCP 45(c)(2)(A). *See* Exhibit C, LADA So Ordered Subpoena Response dated September 18, 2023 ("LADA Subpoena Response"). In addition, LADA also cited boilerplate and inapplicable regulations such as attorney client privilege, work product doctrine and official information privilege (FRCP 26 (b)(3)(A)), documents exempt from disclosure (C.F.R. §81.6(g)) and juvenile court records (18 U.S.C. §5038(1)). To date, LADA has failed to comply with Your Honor's so ordered subpoena and not produced any documents.

## LEGAL STANDARD

FRCP 26 provides that civil litigants "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the party's access to relevant information, the party's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed." Fed. R. Civ. P. 26(b)(1). Rule 26 further provides that relevant information "need not be admissible in evidence to be discoverable." *See id.*

Similarly, FRCP 45 circumscribes the information that may be obtained through discovery via subpoena power. *See* Fed. R. Civ. P. 45(a). Under FRCP 45(d)(2), a party who has properly served a subpoena "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i); *see, e.g., Gov't Emps. Ins. v. Dinesh Verma Med., P.C.*, 22-CV-2893 (GRB)(JMW), 2023 WL 2771638, at *1 (E.D.N.Y. 2023). The party issuing the subpoena must demonstrate that that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Gov't Emps. Ins.*, 2023 WL 2771638, at *1. Relevance for purposes of a subpoena issued pursuant to Rule 45 is analyzed under the familiar standard outlined by Rule 26(b)(1). *See Silver Sands Motel Inc. v. Long Island Cap. Mgmt.*, 21-CV-1224 (GRB)(JMW), 2023 WL 4054526, at *5 (E.D.N.Y. 2023)("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1).").

Most importantly, when a Federal District Court issues a so ordered subpoena, it has issued a court order that must be complied with. When the court issues a subpoena, it creates an entirely different impact than an attorney-issued subpoena. The involvement of the Court makes a subpoena a court order and "that intervention serves to alert the offending party to the seriousness of its noncompliance and permits the judicial scrutiny of the discovery request." *See Galgano v. County of Putnam*, 16-CV-3572 (KMK)(PED), 2021 WL 2036709 (S.D.N.Y. 2021).

**A.    LADA's Objections are Untimely and Must Be Rejected**

Pursuant to Rule 45, objections must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). A nonparty that fails to timely and properly object to a subpoena generally waives any objection it may have had. *DG Creditor Corp. v. Dabah*, 151 F.3d 75, 81 (2d Cir. 1988); *Preston Hollow Capital LLC v.*

3

Case 7:22-cv-00795-KMK-JCM   Document 204   Filed 10/18/23   Page 4 of 7



*Nuveen Asset Management LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023) (holding nonparty waived its right to object to subpoena because it did not file objections within 14 days or a motion to quash as required by Rule 45(d)(2)(B)). Here, the LADA was duly served with the so ordered subpoena on August 22, 2023. *See* Doc. No. 191. The LADA responded with objections by email dated September 18, 2023 citing FRCP 45 and various inapplicable regulations. *See* Exhibit A, LADA Response. Accordingly, LADA's objection on September 18, 2023 is untimely since it was not served within 14 days. Moreover, Plaintiffs did not consent to service by email.

Additionally, when a nonparty is served with a subpoena duces tecum and does not comply or serve timely objections, it may instead move to quash or modify the subpoena before the requested date for production of documents. Fed. R. Civ. 45(d)(3); *Benthos Master Fund, Ltd. v. Etra*, 20-CV-3384 (VEC), 2022 WL 4467249, *8 (S.D.N.Y. Sept. 26, 2022). Here, LADA also failed to move to quash or modify Plaintiffs' subpoena. Accordingly, LADA's objections are untimely on these grounds, as well.

**B.     Documents Sought by Plaintiff are Indisputably Relevant**

As a threshold procedural matter, federal courts have broad latitude in conducting and overseeing pre-trial discovery. *In re Fitch*, 330 F.3d 104, 108 (2d Cir. 2003). The Court has "broad discretion" in determining relevance for discovery purposes. *See In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 115 (2d Cir. 2020) (recognizing courts have "broad discretion in managing discovery"). Plaintiffs concede that a party seeking discovery bears the initial burden of proving the discovery is relevant. Fed. R. Civ. P. 26(b)(1); *Citizens Union of City of N.Y. v. Attorney General of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. Sept. 1, 2017).

Here, the information sought in Plaintiffs' so ordered subpoena is clearly relevant, proportional, and reasonably calculated to lead to the discovery of admissible evidence in support of their wrongful death action against the Estate of Robert Durst for the murder of their family member Kathie. In this regard, this Court has "broad discretion" in determining relevance for discovery purposes. *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d at 115. Additionally, a court "so orders" a subpoena typically where the recipient of the subpoena is subject to privacy regulations or has an announced policy requiring a court order, and where the relevance of the subpoenaed material is clear. *See Galgano v. County of Putnam*, 16-CV-3572 (KMK)(PED), 2021 WL 2036709, at *1 (S.D.N.Y. May 21, 2021).

The relevance of Plaintiffs' subpoena is made clear by the overwhelming mountain of evidence presented by LADA in the criminal trial where Robert Durst was charged and convicted under California Penal Code §190.2(a)(10) for the first degree murder of a witness who possessed relevant and material information regarding Kathie's murder at the hands of Durst. Throughout the trial, LADA presented compelling reasons for Robert Durst's motive, intent and opportunity to murder Kathie and subsequently murder Susan Berman, to permanently silence Ms. Beman - a critical witness to Kathie's disappearance and murder.  Indeed, the linchpin of Robert Durst's 2021 conviction rested on proof submitted at the Berman trial that he

4



murdered Kathie in 1982 and coverup this crime for over forty (40) years with the assistance of Berman until he murdered her.

Plaintiffs seek the requested discovery to meet their burden of proof in their civil action against Robert Durst's estate - a requirement set forth in Judge Karas's Opinion and Order denying Defendant's motion to dismiss. *See* Doc. No. 82, 3/31/23 Opinion pp. 22, 24.

**C.     LADA's Boilerplate Obejctions are Patently Improper**

Even if LADA served their objections within the proper time limits imposed by FRCP 45, LADA's objections were patently improper and should therefore be rejected. LADA responded with the same, copy and pasted, boilerplate responses to each of Plaintiffs' discovery requests. LADA made each objection without any attempt to explain or support same with any relevant facts or documents. Courts have overwhelmingly held that boilerplate objections that include "unsubstantiated" claims of undue burden, overbreadth and lack of relevancy are inappropriate responses to discovery demands. *See Freydl v. Meringolo*, 09-CV-7196 (BSJ)(KNF), 2011 WL 2566087 at *4 (S.D.N.Y. June 16, 2011) ("Asserting boilerplate objections to every request made in the plaintiff's first set of interrogatories and his first set of requests for production of documents, without answering any interrogatory or producing any document, amounts to a blanket refusal to participate in discovery and is 'a paradigm of discovery abuse.'"); *see also Distefano v. Law Offices of Barbara H. Katsos, P.C.*, 11-CV-2893 (JS)(AKT), 2013 WL 1339536, at *6 (E.D.N.Y. March 29, 2013), *citing In re Priceline.com Inc. Secs. Litig.*, 233 F.R.D. 83, 85 (D.Conn. 2005) ("Defendants' litany of non-specific, boilerplate objections to this straightforward request are inappropriate. . . '[G]eneric, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure.'").

Here, LADA asserted the same, identical objections for each of Plaintiffs' requests in the so ordered subpoena, and failed to offer well supported arguments of why the information should not be produced. Accordingly, LADA has effectively refused to participate in discovery despite the Court's Order. LADA also claims that Plaintiffs' subpoena was incorrectly served in accordance with the "100-mile rule" of FRCP 45(c)(2)(A). In this "era of electronic documents," where copies of documents can be easily made and transported this factor assumes less importance than it did previously and has little bearing on a court's ultimate determination. *Alpha Industries, Inc. v. Alpha Clothing Co. LLC*, 21-CV-87 (KPF), 2021 WL 2688722, at *9 (S.D.N.Y. June 30, 2021); *see* FRCP 45, Advisory Notes. Additionally, LADA has not provided any explanation as to why it would be so difficult to transport documents to New York, now, when they previously agreed to do so for Defendant.

Likewise, LADA set forth totally inapplicable objections in their boilerplate response. One blatant example is that LADA cites 18 USC §5038 which protects records from juvenile delinquency proceedings. As Durst was a 77-year-old man at the time of his conviction, and grown adult at the time he murdered Kathy Durst, Morris Black, and Susan Berman, it is inconceivable how LADA could be protecting records based on the juvenile delinquency

5

Case 7:22-cv-00795-KMK-JCM Document 204 Filed 10/18/23 Page 6 of 7



exception. The only explanation for this cite is LADA's laziness in their assertion of inapplicable objections and refusal to cooperate with this Court's Order.

Assuming that exemptions *could* be applicable to *some* requests, they are certainly not applicable to all. Another prime example is seen in LADA's objections to Requests 2-4 relate to public filings, transcripts of proceedings, and decisions of the Court in *People v. Durst*. There is no logical explanation that these records could be subject to any privilege protections. Requests 5-6 relate to communications with the attorneys for a non-party witness and therefore are also not subject to any attorney-client privilege that LADA is able to invoke.

Even if some of the subpoenaed records were subject to privilege protections, LADA was required to describe the nature of the records that could not be produced. *See Frydel*, 2011 WL 2566087, at *3 ("[Defendant]'s objections based on "the attorney-client privilege, the work product doctrine, and/or any other privilege or immunity" are overruled because [Defendant] failed to describe the nature of the documents, communications or tangible things not produced or disclosed, as required by Rule 26(b)(5)."). LADA was further obligated under FRCP 45(e)(2)(A) to "(i) expressly make the claim and (ii) describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Not only did LADA fail to describe the nature of the withheld documents, but also failed to produce non-privileged records subject to the subpoena. *See Hickman v. Taylor*, 329 U.S. 495, 506 (1947)( "[S]ince the discovery provisions are to be applied as broadly and liberally as possible, the privilege limitation must be restricted to its narrowest bounds.").

Regardless, LADA waived any right to refuse production of the documents reference in the so ordered subpoena when it permitted the incredibly public live broadcasting of the *People v. Durst* trial.[2] The testimony and evidence used at trial is public record, especially since it was televised and broadcasted. *See Abdou v. Gurrieri*, 05-CV-3946 (JG)(KAM), 2006 WL 2729247, at *2 (E.D.N.Y. Sept. 25, 2006 (granting plaintiff's motion to compel, in part, because witness's testimony at a deposition that he had contact with and provided information to the FBI is a matter of public record that plaintiff is entitled to discover material related to such contacts and information). Each and every testimony that occurred during LADA's criminal trial of Robert Durst is currently available to the public to view on Youtube.com.

### D. Document Production in Compliance with a So Ordered Subpoena Cannot be Conditioned on a Protective Order

Lastly, LADA's demand at the end of each boilerplate objection for a protective order is improper. At the end of each demand, the LADA states that "[n]ot withstanding said objections and subject thereto . . . Responding Party will comply and produce by electronic means and/or in California the responsive documents subject to a protective order." The subject of a discovery demand cannot delay production or withhold discovery without trial court authorization. Even

---

[2] *Law & Crime Network.* https://www.youtube.com/playlist?list=PLoW1SIeAWaWbvl7uLVvuXaq3gCJiDSiNg (last visited October 11, 2023)

6



then, the moving party must establish the need for a protective order to delay discovery. *See Gordon v. Target Corporation*, 318 F.R.D. 242, 244-45 (E.D.N.Y. 2016) (holding that a party is not free to unilaterally withhold production without court authorization by first satisfying the burden of establishing the need for a protective order). Here, LADA did not seek formally seek a protective order and certainly did not establish the need for a protective order in its objections. There are no reasonable grounds for a protective order which would delay discovery based on the facts of LADA's case against Robert Durst, or this present civil suit where there a tight discovery schedule has been ordered.

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that Plaintiff's motion to compel LADA to produce documents and records referenced in the so ordered subpoena should be granted. Any further delay will likely impact the strict fact discovery deadline set forth by Judge Karas and thereby prejudice the Plaintiffs in this action.

Respectfully submitted,

s/Robert Abrams
Robert Abrams